IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| LULA FERRUCHI, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-11-0228 |
| WAL-MART STORES, INC., | * | |
| Defendant. | * | |

* * * * * * * * * * * *

MEMORANDUM OPINION

Lula Ferruchi sued Wal-Mart Stores, Inc. ("Wal-Mart") for violating Title VII of the Civil Rights Act of 1964, the Maryland Human Relations Act, and the Baltimore City Code. For the following reasons, Wal-Mart's motion to partially dismiss will be granted.

I. Background[1]

Ferruchi is a United States citizen who was born in Ghana. Compl. ¶¶ 5, 7. She "speak[s] fluent English" but "ha[s] a noticeable accent." *Id.* ¶ 8. In 1999, Ferruchi began working as an assistant manager at the Wal-Mart in Glen Burnie, Maryland. Compl. ¶ 9. For the next eight years, Ferruchi "received excellent performance evaluations and regular

---

[1] For the motion to dismiss, the well-pled allegations in Ferruchi's complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

promotions." *Id.* ¶ 10. She eventually became co-manager of the Glen Burnie store and manager of the Port Covington store. *Id.* ¶ 11.

In July 2008, Wal-Mart hired Stephanie Cain as the market manager for Ferruchi's region. *Id.* ¶ 13. When Cain became market manager "all of the other store managers [in the region] were native born Americans who spoke English without any accent." *Id.* ¶ 15. In her role as market manager, Cain supervised Ferruchi and gave her performance evaluations. *Id.* ¶¶ 16-17. "After consistently receiving ratings of 'Exceeds Expectations' for 9 years, Ms. Cain gave [Ferruchi] a rating of 'Development Needed,' a substantial downgrade from her previous performance ratings." *Id.* ¶ 18.

Cain "repeatedly sent members of the market team to [Ferruchi's] store" and "encouraged [Ferruchi's] employees to say negative things about [her] and her management competency." *Id.* ¶¶ 20-22. "Even though other stores and their managers had lower performance, Ms. Cain did not send members of the market team to those stores." *Id.* ¶ 23.

Beginning in February 2009, Cain required Ferruchi to "attend store inventory preparation for other stores in the market but refused to give [her] an area of responsibility." *Id.* ¶ 25. "Following the store preparation, each manager was required to provide an oral report of the area for which they

2

were responsible . . . [Ferruchi] was excluded from the reporting process, subjecting [her] to embarrassment and confusion in front of the other managers in the market." *Id.* ¶¶ 28-29.

In June 2009, Ferruchi "received a Decision Day, [Wal-Mart's] highest level of discipline prior to termination." *Id.* ¶ 31. Ferruchi alleges that she received the "Decision Day" because of "Cain's discrimination [based on her] national origin and her accent." *Id.* ¶ 34. In August 2009, Cain sent Arthur Smith to assist Ferruchi in announcing a new policy to her staff, even though Ferruchi had not asked for help. *Id.* ¶¶ 39-40. No other store managers were sent assistance in announcing policy changes, unless they asked for it. *Id.* ¶ 41.

Ferruchi complained about Cain several times to Phil Morris and Gisel Ruiz in Wal-Mart's human resources department. *Id.* ¶ 44. Morris and Ruiz ignored her complaints, and on September 4, 2009, Ferruchi was terminated. *Id.* ¶¶ 43 & 45.

On December 17, 2009, Ferruchi's counsel sent a letter to the Equal Employment Opportunity Commission ("EEOC") describing Cain's actions. *Id.* ¶ 47; Pl.'s Opp'n, Ex. 1. On May 11, 2010, Ferruchi filed a formal charge of discrimination with the EEOC and the Baltimore Community Relations Commission. Def.'s Mot., Ex. A. On October 29, 2010, the EEOC issued Ferruchi a right to sue letter. Compl. ¶ 47.

On December 13, 2010, Ferruchi sued Wal-Mart in the Circuit Court for Baltimore City. ECF No. 2. On January 26, 2011, the case was removed to this Court. ECF No. 1. On February 2, 2011, Wal-Mart filed its motion to partially dismiss. ECF No. 9.

II. Analysis

A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

4

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(*quoting Twombly,* 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

B. Wal-Mart's Motion

1. Title VII Claim

In Count I of her complaint, Ferruchi alleges that Wal-Mart subjected her to "harassment . . . due to her national origin and her accent" in violation of Title VII of the Civil Rights Act of 1964.[2] Compl. ¶ 50. Wal-Mart argues that this hostile work environment claim should be dismissed because Ferruchi's EEOC charge was untimely, and her allegations are insufficient to state a claim. Def.'s Mem. 5.

---

[2] 42 U.S.C. §§ 2000e *et seq.*

a. Timeliness

To bring a Title VII claim in federal court, a plaintiff must first exhaust her administrative remedies by filing a timely charge of discrimination with the EEOC. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). There are two limitations periods within which the EEOC charge may be filed. "The basic limitations period is 180 days after the alleged unlawful employment practice." *Edelman v. Lynchburg College*, 228 F.3d 503, 506 (4th Cir. 2000) (*citing* 42 U.S.C. § 2000e-5 (e)(1)). In deferral states such as Maryland,[3] the period is extended to 300 days. *See Williams v. Giant Food, Inc.*, 370 F.3d 423, 428 (4th Cir. 2004); 42 U.S.C. § 2000e-5 (e)(1)). Thus, to be timely, Ferruchi's EEOC charge must have been filed within 300 days of the alleged unlawful employment practice.

Ferruchi alleges that her counsel filed a timely charge by sending the December 17, 2009 letter to the EEOC. Compl. ¶¶ 43 & 47. Wal-Mart argues that Ferruchi did not file her EEOC charge until May 11, 2010, and any allegations of discrimination occurring before July 15, 2009 are untimely. Def.'s Mem. 5-6.

---

[3] Deferral states have "a State or local agency with authority to grant or seek relief from [unlawful employment] practice[s] or to institute criminal proceedings with respect thereto." 42 U.S.C. § 2000e-5 (e)(1). "The Baltimore Community Relations Commission . . . is one such local agency with authority over employment discrimination cases." *Borders v. Policy Studies, Inc.*, 2008 WL 3200725, at *4 (D. Md. Aug. 5, 2008).

1. Date of the Charge

An informal filing with the EEOC may be considered a "charge" of discrimination if it provides "the information required by the regulations, *i.e.*, an allegation and the name of the charged party" and is "reasonably construed as a request for the [EEOC] to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008).[4] The filing "must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial process." *Id.*

The December 17, 2009 letter stated that it was submitted "in support of Ms. Ferruchi's charge of discrimination." Pl.'s Opp'n, Ex. 1 at 1.[5] It explained Ferruchi's interactions with Cain and her belief that "she was treated different from the other store managers because of her accent." *Id.* at 3. Although, the letter named the person making the charge and the

---

[4] Although *Holowecki* considered violations of the Age Discrimination in Employment Act ("ADEA"), it has been followed in Title VII cases. *See, e.g., Grice v. Baltimore Cnty.*, 2008 WL 4849322, at *4 (D. Md. Nov. 5, 2008) (collecting cases).

[5] This Court may consider the letter without converting Wal-Mart's motion to one for summary judgment because the letter is integral to and expressly relied on in Ferruchi's complaint. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

7

person against whom the charge was made, and recited facts of the alleged unlawful employment practice, it cannot reasonably be construed as a request for agency action.

The letter does not request that the EEOC investigate Wal-Mart or authorize the agency to disclose Ferruchi's identity or complaint to Wal-Mart,[6] and it does not state that she seeks any relief.[7] It does not "request[] [that] the [EEOC] activate its machinery and remedial process." Holowecki, 552 U.S. at 402. Accordingly, Ferruchi's EEOC charge is the formal charge of discrimination submitted on May 11, 2010.[8]

---

[6] See Holowecki, 552 U.S. at 405-06 (claimant's waiver allowing the EEOC to disclose her identity to her employer, combined with the "request in [her] affidavit that the agency 'force' the employer to stop discriminating," were sufficient "to bring the entire filing within the definition of charge.").

[7] Compare King v. Lowe's Home Ctrs., Inc., 2009 WL 3681686, at *4-5 (D. Md. Nov. 2, 2009)(filing was not a charge when it "contain[ed] the parties' contact information and some general facts regarding [the] claims against Lowe's" but did "not state the relief [the claimant was] seeking, nor . . . ask the EEOC to take action against Lowe's") with Carson v. Cudd Pressure Control, Inc., 299 Fed. Appx. 845, 848 (10th Cir. 2008) (filing was a charge when claimant stated that he "expect[ed] . . . back pay, front pay, [and] reinstatement of stock incentives," thereby demonstrating his "intent to seek EEOC assistance in enforcing his perceived rights").

[8] Ferruchi argues the May 11, 2010 formal charge relates back to the December 17, 2009 letter, making all her allegations timely. Pl.'s Opp'n 4. After filing, "[a] charge may be amended to cure technical defects or omissions . . . or to clarify and amplify allegations made therein." 29 C.F.R. § 1601.12 (b). "Such amendments . . . relate back to the date the charge was first received." Id. But, for the relation back doctrine to apply, the first document filed with the EEOC must "actually constitute

## 2. Continuing Violation Theory

Wal-Mart argues that because Ferruchi did not file her charge until May 11, 2010, any allegations occurring more than 300 days before that date—i.e., before July 15, 2009—are untimely and may not be considered by this Court in determining whether Ferruchi has stated a hostile work environment claim. Def.'s Mem. 5-6. Ferruchi argues that because the continuing violation theory applies to her hostile work environment claim, all her allegations may be considered. Pl.'s Opp'n 5.

Under the continuing violation theory, "[i]f one act in a continuous history of discriminatory conduct falls within the charge filing period, then acts that are plausibly or sufficiently related to that act, which fall outside the filing period, may be considered for purposes of liability." *Lewis v. Norfolk S. Corp.*, 271 F. Supp. 2d 807, 812 (E.D. Va. 2003). The continuing violation theory applies to hostile work environment claims, which are "composed of a series of separate acts that collectively constitute one unlawful employment practice" and are timely if "an[y] act contributing to the claim occur[red] within the filing period." *Nat'l R.R. Passenger Corp. v. Morgan*, 534 U.S. 101, 117 (2002)("It does not matter . . . that

---

a charge." *Garrison v. McCormick & Co.*, 2010 WL 2651639, at *2 (D. Md. June 30, 2010). Because the December 17, 2009 letter was not a charge, the May 11, 2010 filing cannot relate back to it. *See id.* at *2-3.

some of the component acts of the [claim] fall outside the statutory time period.").

Ferruchi alleges that the August 2009 incident when a market team member assisted in announcing new policies contributed to the hostile work environment. Wal-Mart concedes that this incident occurred within the 300 day filing period and is timely. *See* Def.'s Mem. 5-6. Accordingly, all other allegations supporting the hostile work environment claim may be considered. *See Morgan,* 536 U.S. at 117.

b. Sufficiency of the Allegations

Wal-Mart argues that even if Ferruchi is not time-barred, she has failed to state a claim for hostile work environment. Def.'s Mem. 4-5. To maintain a hostile work environment claim based on national origin, a plaintiff must show that: (1) she experienced unwelcome harassment, (2) that was based on her nationality, (3) and was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) there is some basis for imposing liability on her employer. *Bass,* 324 F.3d at 765.

"[T]he standard for proving [a hostile] work environment is intended to be a high one" and the conduct must be "extreme." *Karim v. Staples, Inc.,* 210 F. Supp. 2d 737, 752 (D. Md. 2002). Courts have "repeatedly recognized that anti-discrimination laws such as Title VII were not designed to purge all harassing or

annoying behavior in the workplace." *Id.* Instead, only harassment which is "objectively and subjectively hostile or abusive" is actionable. *Id.* (*citing Hartsell v. Duplex Prods.*, 123 F.3d 766, 773 (4th Cir. 1997)).

Whether a work environment is objectively hostile depends on "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006) (internal citations and quotation marks omitted). "Unlike other, more direct and discrete unlawful employment practices, hostile work environments generally result only after an accumulation of discrete instances of harassment," *id.*, and "courts usually only allow hostile work environment claims to proceed whe[n] the discriminatory abuse is near constant, oftentimes of a violent or threatening nature," *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 777 (D. Md. 2010).

Ferruchi complains that her workplace was hostile because (1) she received a performance evaluation of "Development Needed," (2) market team members were sent to her store and undermined her authority, (3) she received a "Decision Day," and (4) she was required to attend another store's inventory, but not given a task to do. Compl. ¶¶ 18-41. These allegations do

not show harassment based on Ferruchi's nationality,[9] and Ferruchi's conclusionary assertions that the events occurred for that reason are insufficient to show that she is entitled to relief. *Iqubal*, 129 S. Ct. at 1950 (allegations must not simply allege, but must "show" that the plaintiff is entitled to relief).

Ferruchi also alleges that her workplace was hostile because a market team member was sent to help her announce new policies to her staff. Although this could be interpreted as motivated by Ferruchi's accent, a single instance of discrimination is insufficient to state a claim for hostile work environment.[10] If all of Cain's actions were motivated by Ferruchi's national origin, her allegations would be insufficient to show an objectively hostile workplace.[11]

---

[9] *See Watson v. Gutierrez*, 2006 WL 1647116, at *5 (E.D. Va. June 6, 2006)(hostile work environment was not shown when "[e]ach of Plaintiff's allegations involve[d] actions that facially b[ore] no relation to Plaintiff's race").

[10] *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (instance of harassment that "occurred only once" did not "establish sufficiently frequent—i.e., pervasive—hostile treatment" to state a claim).

[11] *See Bass*, 324 F.3d at 765 ("the facts in [the plaintiff's] allegations merely tell a story of a workplace dispute regarding her reassignment and some perhaps callous behavior by her superiors. They do not describe the type of severe or pervasive gender, race, or age based activity necessary to state a hostile work environment claim."); *Watson*, 2006 WL 1647116 at *1 & 5 (supervisor's "act of organizing Plaintiff's office without permission, although potentially humiliating, [was] not at all

12

Accordingly, Wal-Mart's motion to dismiss the Title VII hostile work environment claim will be granted.

   2.   Maryland Human Relations Act

Count II alleges that Wal-Mart violated the Maryland Human Relations Act ("MHRA") by subjecting Ferruchi to harassment and a hostile work environment. Wal-Mart argues that Ferruchi's allegations of harassment are insufficient to state a claim under the MHRA. Def.'s Mem. 4.

Like Title VII, Maryland law requires that hostile work environment plaintiffs show harassment that is "sufficiently severe or pervasive to alter [a] condition[] of employment and create an abusive work environment." *Magee v. DanSources Technical Servs., Inc.*, 137 Md. App. 527, 550 (Md. Ct. Spec. App. 2001)(*quoting Manikhi v. Mass Transit Admin.*, 360 Md. 333, 348-49 (2000)). Ferruchi's allegations, which are insufficient to show severe harassment under Title VII, do not show severe harassment under the MHRA. *See id.* That claim will be dismissed.

   3.   Baltimore City Code Claim

Count III of Ferruchi's complaint alleges that Wal-Mart subjected her "to unequal terms and conditions of employment"

---

cognizable as racially insulting" and decline in performance ratings from "fully successful" to "unsatisfactory" also did not show harassment).

and "discharge[d] her due to her national origin and her accent" in violation of Article 4 of the Baltimore City Code. Compl. ¶ 57. Wal-Mart argues that this claim must be dismissed because Title IV of the Baltimore City Code does not provide a private right of action. Def.'s Mem. 8. Ferruchi has not addressed this argument in her opposition to Wal-Mart's motion. Ferruchi has abandoned this claim, and Count III will be dismissed.[12]

III. Conclusion

For the reasons stated above, Wal-Mart's motion to partially dismiss will be granted.[13]

_5/4/11_
Date

_[signature]_
William D. Quarles, Jr.
United States District Judge

---

[12] *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 783 (D. Md. 2010) (*citing Mentech v. E. Sav. Bank*, 949 F. Supp. 1236, 1247 (D. Md. 1997)). Had Ferruchi not abandoned her claim, it would still have been dismissed. *See West v. CSX Corp.*, 2006 WL 373843, at *1 (D. Md. Feb. 16, 2006)("Article 4 of the Baltimore City Code does not expressly create a private right of action" and "[i]f it did so, it would be in violation of the Maryland constitution.").

[13] Ferruchi's wrongful termination claims, which Wal-Mart has not addressed, will not be dismissed.